26 F.3d 130
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re GRAND JURY PROCEEDINGS.
Oscar B. GOODMAN, Witness-Appellant,
v.
UNITED STATES of America, Appellee.
 No. 94-15830.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 7, 1994.*
Decided June 13, 1994.
 
 1
 Before: TANG, PREGERSON and T.G. NELSON, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Oscar B. Goodman appeals the district court's judgment of contempt for his refusal to produce records pertaining to fee information and arrangements for the legal representation of Natale Richichi.[1] We have jurisdiction under 28 U.S.C. Secs. 1291 and 1826(a). We review the district court's adjudication of civil contempt for abuse of discretion, In re Grand Jury Proceedings (Lahey), 914 F.2d 1372, 1373 (9th Cir.1990) (per curiam), and we affirm.[2]
 
 
 4
 A witness who refuses without just cause to comply with an order of the court to testify or produce documents before the grand jury may be held in civil contempt. 28 U.S.C. Sec. 1826.
 
 Eighth Amendment
 
 5
 Goodman contends that his compliance with the grand jury subpoena would violate his Eighth Amendment right to be free from excessive fines.[3] Specifically, Goodman appears to claim that by complying with the grand jury subpoena to produce fee records, he would be forced to reveal the fact that he did not complete Form 8300 as required, thereby subjecting him to substantial fines pursuant to Internal Revenue Service Code Sec. 6050-I.[4] However, by virtue of the March 16, 1994 letter from the Internal Revenue Service (IRS) to Goodman, it is clear that the IRS is already aware that Goodman has failed to entirely complete Form 8300.
 
 
 6
 Goodman also appears to claim that his compliance with the grand jury subpoena would constitute a waiver of his Eighth Amendment protection in the event that the IRS initiates enforcement proceedings against him. This contention is without merit.
 
 
 7
 First, the Eighth Amendment is not applicable until there has been a formal adjudication of guilt in accordance with due process of law. See Ingraham v. Wright, 430 U.S. 651, 671-72 n. 40 (1977). Here, Goodman's argument is speculative and premature. It assumes that the IRS will initiate civil enforcement proceedings against him and impose a fine. See id. The time to raise the issue of an Eighth Amendment violation of his right to be free from excessive fines is after the imposition of such a fine. See id.
 
 
 8
 Second, Fed.R.Crim.P. 6(e) prohibits the disclosure of information obtained during a grand jury investigation for use in civil proceedings without a court order authorizing such disclosure. Therefore, the IRS would not be automatically entitled to information obtained by the grand jury.
 
 
 9
 Third, this court has generally found that before a defendant is deemed to have waived a right, the court must be convinced that the waiver was made intentionally and expressly. Adamson v. Ricketts, 789 F.2d 722, 727 (9th Cir.1986) (citing United States v. Anderson, 514 F.2d 583, 586 (7th Cir.1975)). Here, even if the Eighth Amendment did apply, it is clear that Goodman has not intentionally nor expressly waived his Eighth Amendment protection, and his compelled production of information before the grand jury does not constitute a waiver. See id.
 
 
 10
 Accordingly, we find that Goodman's refusal to produce records or to testify regarding records pertaining to fee arrangements for representing Natale Richichi on the basis of the Eighth Amendment has no bearing on the grand jury's inquiry. The district court's finding is supported by a reasonable view of the record. See United States v. Twine, 853 F.2d 676, 681 (9th Cir.1988).
 
 Sixth Amendment
 
 11
 Goodman next asserts his client's Sixth Amendment right to counsel as just cause for his refusal to produce records pertaining to his fee arrangements with Natale Richichi. Goodman contends that if forced to produce the documents sought by the grand jury, he may become a witness against his client in later proceedings, creating a conflict of interest requiring him to withdraw.[5]
 
 
 12
 The district court rejected Goodman's arguments because it concluded that Natale Richichi's Sixth Amendment right to counsel had not yet "attached" with respect to matters under investigation, as to which no indictment had been returned, citing Kirby v. Illinois, 406 U.S. 682, 688 (1972). By so concluding, the district court incorrectly implied that the government can interfere with impunity in the attorney-client relationship before the right to counsel "attaches" under the Kirby test. Supreme Court cases regarding timing of a criminal defendant's confession and attachment of the right to counsel, see, e.g., id.; Moran v. Burbine, 475 U.S. 412, 429-30 (1986), are inapposite and misleading in the context of this case. The Sixth Amendment can apply when the government's conduct occurs pre-indictment. Therefore, the problem with Goodman's challenge is not the applicability of the Sixth Amendment.
 
 
 13
 Rather, the problem with Goodman's challenge is that it is premature and speculative. See Tornay v. United States, 840 F.2d 1424, 1429-30 (9th Cir.1988) (noting that the government might not indict or use the requested information, or might present it without counsel's testimony, and finding no evidence that the government was attempting to disqualify counsel). "It is clear that government interference with a defendant's relationship with his attorney may render counsel's assistance so ineffective as to violate his Sixth Amendment right to counsel...." United States v. Irwin, 612 F.2d 1182, 1185 (9th Cir.1980).
 
 
 14
 Nevertheless, Goodman has not shown that the grand jury subpoena was issued for an improper purpose such as harassment or other prosecutorial abuse. See Tornay, 840 F.2d at 1430. Nor has he shown that compliance will create an actual conflict between him and his client, Natale Richichi, that interferes with their attorney-client relationship. See id. It is not clear that (after the right to counsel "attaches") Goodman will ever be required to testify against his client or that he will need to withdraw his representation.
 
 
 15
 This is especially true for two reasons. First, the government used a subpoena duces tecum, directed to Goodman's law firm, not to Goodman personally. Goodman does not need to make a personal appearance, let alone testify--even a bookkeeper can turn over the records. Second, the government assured the district court that it does not intend to do anything that would force Goodman to withdraw and that it would be willing to resolve the dispute by stipulation if necessary.
 
 
 16
 Goodman should have informed his client in advance that fee information is generally unprotected. Having failed to do so, Goodman cannot instead rely on the Sixth Amendment right to counsel as a basis for refusing to produce the fee records. See Tornay, 840 F.2d at 1429-30.
 
 Attorney-Client Privilege
 
 17
 Finally, Goodman asserts that compliance with the grand jury subpoena will interfere with the attorney-client privilege. Goodman contends that the information sought by the grand jury--records pertaining to any fee arrangements between Goodman and Richichi--are privileged information because they would supply the last link for a possible conspiracy indictment under United States v. Klein, 247 F.2d 908 (2d Cir.1957), cert. denied, 355 U.S. 924 (1958). This contention is without merit.
 
 
 18
 "The purpose of the attorney-client privilege is to protect every person's right to confide in counsel free from apprehension of disclosure of confidential communications." In re Osterhoudt, 722 F.2d 591, 593 (9th Cir.1983) (per curiam) (citing Baird v. Koerner, 279 F.2d 623, 629-30 (9th Cir.1960)). "Information regarding the fee arrangement is ordinarily not part of the subject matter of the professional consulting and therefore is not privileged communication even though it may evidence wrongdoing by the client." See In re Osterhoudt, 722 F.2d 591, 592 (9th Cir.1983) (per curiam) (citing United States v. Sherman, 627 F.2d 189, 191-92 (9th Cir.1980)).
 
 
 19
 Here, the grand jury seeks to know only the amount of money Goodman received, the dates, and where the money came from. The government concedes in its brief that, to the extend the records contain confidential communications in addition to unprotected fee information, they can be redacted to protect the confidential information.
 
 
 20
 Nevertheless, the identity of the client and the fee arrangements made between attorney and client will be considered privileged where the disclosure of that information is "material only for the purpose of showing an acknowledgment of guilt on the part of such client of the very offense on account of which the attorney was employed." Baird, 279 F.2d at 633; see also In re Michaelson, 511 F.2d 882, 888 (9th Cir.), cert. denied, 421 U.S. 978 (1975).[6]
 
 
 21
 Here, Goodman argues that Richichi initially sought legal advice from Goodman regarding his Nevada and Florida indictments. Goodman asserts that he later undertook representation of Richichi in the present grand jury investigation of a possible conspiracy to defraud the United States and to impede the administration of internal revenue laws under Klein.
 
 
 22
 Goodman's argument is predicated on the assumption that the privilege applies whenever evidence regarding the fees paid to the attorney would implicate the client in a criminal offense for which the client sought the attorney's legal advice. But see In re Osterhoudt, 722 F.2d at 592-93. This argument must fail.
 
 
 23
 The fact that Richichi retained Goodman to represent him in the grand jury investigation of a possible Klein conspiracy does not in and of itself reveal any confidential communication. See Baird, 279 F.2d at 632. Furthermore, even if the records pertaining to the fee agreements between Richichi and Goodman evidenced some wrongdoing by Richichi, it does not automatically become privileged. See Sherman, 627 F.2d at 191-92. Moreover, assuming Goodman could argue that the fee arrangement information was privileged, he presented no records or information to the district court in its in-camera hearing supporting his theory that production of fee records would provide the essence of any confidential communication. See In re Osterhoudt, 722 F.2d at 563; see also United States v. Brown, 918 F.2d 82, 84 (9th Cir.1990).
 
 
 24
 Accordingly, Goodman cannot validly assert the attorney-client privilege as just cause for his refusal to comply with the grand jury subpoena. See id. The district court did not abuse its discretion in holding Goodman in contempt of court.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The original grand jury subpoena required Goodman to produce "all records of any form of payment received and/or promised for legal representation of Natale Richichi, Carmello Richichi, Carol Resnick, Nancy Alba, or Gustave Alba.... [t]hese records should include, but are not limited to: retainer agreements; all billings; the date(s), amount(s), and means of all payments received; the identity of the person(s) or entities making the payments; and copies of all checks, money orders, and/or cashier's checks used to make payments." Goodman only challenges the request for fee information in connection with his representation of Natale Richichi
 
 
 [2]
 The motion of the National Association of Criminal Defense Lawyers and the California Attorneys for Criminal Justice, to file a joint brief of amici curiae in support of appellant, is granted and the brief is ordered filed
 
 
 [3]
 The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
 
 
 [4]
 Section 6050-I requires anyone engaged in a trade to complete and file Form 8300 whenever a business accepts $10,000 or more in cash payments for services
 That section provides that failure to complete Form 8300 could result in a fine of up to $100,000.00 for failure to comply. Goodman's contention rests on his potential civil liability from the Internal Revenue Service for his failure to disclose his client's identity on Form 8300.
 
 
 [5]
 Goodman and amici curiae, the National Association of Criminal Defense Lawyers and California Attorneys for Criminal Justice, argue that by permitting the government to use grand jury subpoena powers to compel an attorney to disclose certain information, the court is essentially permitting the government to disqualify counsel and violating the client's right to counsel of choice
 
 
 [6]
 Three major exceptions to this general principle have arisen among the various circuits. They are the "last-link" exception, the "legal advice" exception and the "confidential communication" exception. See In re Grand Jury (Anderson), 906 F.2d 1485 (10th Cir.1990) (detailed analysis of each exception). Goodman's argument is based on all three exceptions, referred to collectively as the "last-link" doctrine