**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RALPH SHAFFER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff - Appellee,<br><br>  v.<br><br>CONTINENTAL CASUALTY COMPANY; CNA FINANCIAL CORPORATION d/b/a CNA LTC; VALLEY FORGE LIFE INSURANCE COMPANY,<br><br>        Defendants - Appellees,<br><br>  and<br><br>ROBERT M. JOHNSON,<br><br>        Appellant. | No. 08-56124<br><br>D.C. No. 2:06-cv-02235-PSG-PJW<br><br>MEMORANDUM [*] |
| RALPH SHAFFER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff - Appellee,<br><br>  v. | No. 08-56125<br><br>D.C. No. 2:06-cv-02235-PSG-PJW |

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

CONTINENTAL CASUALTY
COMPANY; CNA FINANCIAL
CORPORATION d/b/a CNA LTC;
VALLEY FORGE LIFE INSURANCE
COMPANY,

          Defendants - Appellees,

   and

PHYLLIS LANDAU,,

          Appellant.

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted November 5, 2009
Pasadena, California

Before: GOULD and BEA, Circuit Judges, and HART,[**] District Judge.

This dispute arises from the district court's approval of a nationwide class

action settlement between the plaintiffs—a class of long term care insurance

policyholders—and the insurance company defendants ("CNA"). On appeal,

plaintiff-objectors Phyllis Landau and Robert Johnson contend the district court

made several errors when it approved the settlement. We affirm.

---

[**] The Honorable William T. Hart, Senior District Judge for the
Northern District of Illinois, sitting by designation.

2

**1.** The district court did not abuse its discretion when it found the class action settlement was fundamentally fair, reasonable, and adequate. A district court may approve a class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). A "higher standard of fairness" is required where, as here, settlement negotiations occurred before class certification. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The district court must "explore[] comprehensively" relevant factors, such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* We reverse a district court's decision to approve a settlement "only upon a strong showing that the district court's decision was a clear abuse of discretion." *Id.* (citation omitted). Here, there was no such abuse of discretion.

The district court comprehensively explored the factors relevant to the case even though its written findings were conclusory. Where the record shows that the district court "considered the relevant factors and provided a reasoned response to settlement objections," we will uphold even a conclusory finding that a settlement is fair, reasonable, and adequate. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d

3

566, 577 (9th Cir. 2004).  Here, the district court oversaw pre-trial motions and discovery and held a preliminary hearing and a fairness hearing.  At the district court's request, class counsel submitted memoranda analyzing the value of the settlement and the reasonableness of the attorneys' fees award.  The district court also read and listened to objections raised by class members and asked specific questions of class counsel based on those objections.

We recognize that the settlement included a broad release of class members' claims against CNA.  However, a number of factors convince us the district court did not abuse its discretion when it found the settlement was fair, reasonable, and adequate: (1) CNA had a strong defense to liability—the explicit language on the first page of CNA's policies: "We may change the premium rates."; (2) an expert actuary hired by class counsel estimated the value of the settlement at over $60 million, while the objectors did not provide an expert valuation of the settlement or even estimate its value; (3) the settlement provided class members with options for adjusting their coverage that have value, even though no cash refund is available; and (4) less than 1% of the class opted out of the class and only 0.12% of the class objected to the proposed settlement.

2.      The district court did not abuse its discretion when it found that class counsel and class representatives would adequately represent the class, as required

4

by Rule 23(a)(4) of the Federal Rules of Civil Procedure. Class representation is adequate if (1) no conflicts of interest exist between class counsel or class representatives and class members; and (2) class counsel and class representatives will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

First, Landau contends class counsel had a conflict of interest with class members who were not California residents because class counsel would receive $5 million in attorneys' fees if the nationwide class was approved. It was unlikely the district court would have approved an award of that size for settlement of a California-only class because of the lesser value of such a settlement. However, the attorneys' fee award was negotiated *after* the parties reached an agreement on the merits. And as we explained above, the district court did not abuse its discretion when it found that the settlement was fair, reasonable, and adequate.

Second, Landau contends class counsel could not vigorously prosecute the action because class counsel (1) lacked the threat of nationwide litigation during settlement negotiations, and (2) had a weak theory of the case: premium payments had been *too low*. But a threat of nationwide litigation *did* exist, although not as a single class action. Class counsel was ready to proceed to trial with a California class, another class representative had stayed a similar claim in Louisiana, and

Landau had previously filed a claim in Illinois. Class counsel's theory of the case—that CNA intentionally "low balled" the initial premium payments—was consistent with the theory of the case Landau presented in her Illinois action Moreover, potential class members had the opportunity to opt out of the settlement if they disagreed with the theory under which class counsel prosecuted the case.

Third, Landau contends class representatives have a conflict of interest with other members of the class because class representatives' premiums have already increased, while other class members' premiums have not yet increased. But the fact that it is *possible* to draw a line between categories of class members does not necessarily *require* separate representation for each category. *See Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003) (holding class representation was adequate even though the class contained both supervisors and rank-and-file employees). The district court could have reasonably concluded, based on its familiarity with the case and the settlement options available to class members, that the differences between class members would not affect the adequacy of representation.

3.      The district court did not err when it held potential class members received adequate notice of the nationwide class action settlement. Potential class members must receive the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.,* 361 F.3d at 575 (citation and internal quotation marks omitted). Here, that requirement was met because 99.9% of potential class members received a concise notice that described the settlement benefits and the claims that class members would be required to release. The notice also explained the procedures for selecting among benefit options, objecting to the settlement, and opting out of the settlement. Although changes were made to the release after potential class members received the notice, the changes did not render the notice inadequate because they narrowed the scope of the release.

Further, the notice did not mislead potential class members. Notice is not adequate if it misleads potential class members. *Molski v. Gleich*, 318 F.3d 937, 952 (9th Cir. 2003). The objectors contend the notice was misleading because a sentence in its cover letter read: "This settlement does not affect your rights under your current policy except to the extent you choose a benefit that alters your current policy." But the cover letter also included a sentence that read: "Even if you do nothing, your legal rights are affected, so please read the enclosed notice." Inside the notice, a heading read: "What am I giving up to get benefits or stay in the Class?" The answer:

> Class members will be releasing Defendants from all the claims described and identified in Section III of the Settlement Agreement. This includes claims relating to the Policies *except for claims relating to bad faith denial of claims* under those Policies. Neither you nor any other Class member will be able to file a lawsuit against the Defendants about the claims resolved in this case, ever again.

(Emphasis added.) Thus, potential class members *were* given notice that the settlement would affect their legal rights and would release all of their claims relating to the policies "except for claims relating to bad faith denial of claims."

**4.** The district court did not abuse its discretion when it awarded $5 million in costs, attorneys' fees, and incentive payments to class representatives. Two methods are available for determining attorneys' fees in "common fund" cases: (1) the percentage method and (2) the lodestar method. *Hanlon*, 150 F.3d at 1029.

Under the percentage method, district courts award class counsel a percentage of the common fund. *Id.* Twenty-five percent is the benchmark. *Id.* However, we have expressed reservations about using the percentage method where no cash fund is created. *See Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003). Where the settlement creates no cash fund, district courts may use the lodestar method as a cross-check. *Id.* Here, no cash fund exists. However, class counsel's expert actuary estimated the value of class benefits to be $24–33 million. Of the $5 million for costs, attorneys' fees, and incentive payments, about $4.4

8

million represents attorneys' fees. Thus, attorneys' fees represent about 13–18% of the value of class benefits—well below the 25% benchmark.

The district court used the lodestar method to cross-check the percentage method. Under the lodestar method, district courts begin by multiplying "the number of hours reasonably expended by a reasonable hourly rate." *Hanlon*, 150 F.3d at 1029. "The resulting figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* The term "multiplier" describes the amount of the increase or decrease from the initial calculation. Here, the award represents the loadstar—$3 million—with a multiplier of about 1.4. This is well within the range of attorneys' fee awards this court has found reasonable. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (upholding an attorneys' fee award that resulted in a multiplier of 3.65).

**AFFIRMED.**

08-56124 Shaffer v. Continental Casualty Co., et al.

BEA, Circuit Judge, specially concurring.

I concur in the memorandum disposition. I write separately because I think we should have dismissed Phyllis Landau's appeal for lack of jurisdiction.[1] Res judicata barred Landau from becoming a class member. Because Landau was precluded from becoming a class member, she was not injured by the settlement and lacks standing to appeal. *See United States v. Chesnoff*, 62 F.3d 1144, 1145 (9th Cir. 1995) (holding that a party lacks standing to appeal a lower court's order if that party is not injured by the order). Thus, we should have dismissed Landau's appeal. Nevertheless, that would not change the outcome of this case: the district court's approval of the class action settlement should be affirmed.

Landau, a Pennsylvania resident, brought a claim against CNA in Illinois state court under the Illinois Consumer Fraud Act. *Landau v. CNA Fin. Corp.*, 886

---

[1] Two of the issues reached in the memorandum disposition were raised before the district court by only Landau: (1) whether the district court abused its discretion when it found class counsel and class representatives adequately represented the class; and (2) whether the district court abused its discretion when it awarded $5 million in costs, attorneys' fees, and incentive payments to class representatives. The other appellant—Robert Johnson—waived these issues because he did not raise them below. But waiver is not jurisdictional; thus, we had discretion to address the issues in our review of Johnson's appeal. *See AlohaCare v. Hawaii Dep't of Human Servs.*, 572 F.3d 740, 744 (9th Cir. 2009) ("Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so." (citation omitted)).

1

N.E.2d 405, 407 (Ill. App. Ct. 2008). She brought the claim on behalf of herself and a nationwide class and alleged CNA, "through uniform deceptive sales and marketing practices," misled putative class members into purchasing long term care insurance. *Id.* The trial court dismissed Landau's claim without prejudice for failure to plead with sufficient specificity. *Id.* Landau then filed an amended complaint. *Id.* The trial court dismissed the amended complaint—this time *with prejudice*—on the ground "Landau lacked standing to bring the complaint in Illinois because the majority of circumstances related to the complaint occurred outside of Illinois." *Id.*

The Appellate Court of Illinois affirmed. *Id.* However, that court explained the issue was *not* one of standing. *Id.* Rather, dismissal was correct because the Illinois Consumer Fraud Act does not "apply to fraudulent transactions that take place outside Illinois." *Id.* (citation omitted). Landau purchased her policy in Pennsylvania, and all contact with CNA representatives occurred in Pennsylvania. *Id.* at 408.

We must apply Illinois law to determine the preclusive effect of Landau's Illinois claim on her claim as a class member in the instant case. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the

2

State from which the judgments emerged would do so." (citing 28 U.S.C. § 1738));

*Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 326 (9th Cir. 1995).

There are three elements of res judicata under Illinois law: "(1) a final judgment on

the merits rendered by a court of competent jurisdiction; (2) an identity of cause of

action; and (3) an identity of parties or their privies." *People ex rel. Burris v.*

*Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992). When res

judicata applies, "the judgment in the former suit is conclusive not only as to all

questions actually decided but as to all questions which might properly have been

litigated and determined in that action." *Id.* Here, all three elements are satisfied.

Landau's claim in Illinois state court resulted in a final judgment on the

merits because the trial court dismissed her claim with prejudice and the dismissal

was not for lack of jurisdiction. Illinois Supreme Court Rule 273 provides:

"Unless the order of dismissal or a statute of this State otherwise specifies, an

involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, . .

. operates as an adjudication upon the merits." Illinois courts apply the rule

"according to its plain terms." *DeLuna v. Treister*, 708 N.E.2d 340, 347 (Ill.

1999). The trial court's dismissal of Landau's claim with prejudice was an

involuntary dismissal. Further, the dismissal was not for lack of jurisdiction;

rather, the dismissal related to the claim's merits—whether Landau stated a claim

3

under the Illinois Consumer Fraud Act. Because the Act lacks extraterritorial effect, Landau failed to state a claim.

The second res judicata requirement is also met because there is an identity between Landau's cause of action in the Illinois court and the cause of action in the instant case. Illinois broadly defines cause of action: "If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted and *res judicata* bars the latter action." *Progressive Land Developers*, 602 N.E.2d at 825 (quoting *Morris v. Union Oil Co.*, 421 N.E.2d 278 (Ill. App. Ct. 1981)). Here, the facts that gave rise to Landau's Illinois claim are the same facts that gave rise to the claim in the instant case. Both claims involved CNA's sale of the same long term care insurance policies and the subsequent increase in premium rates. Both claims included, for example, allegations that CNA's lapse rate assumptions were too high, and that CNA's marketing materials led consumers to believe rates would not increase. Thus, there is an identity of cause of action.

Finally, there is an identity of parties. Landau sued CNA in her Illinois claim. CNA is also a defendant in the instant class action.

Because the three elements of res judicata under Illinois law are satisfied, Landau could not have brought the instant class action in Illinois state court. We,

4

too, must give preclusive effect to the judgment of the Illinois court. *Clements*, 69 F.3d at 326. Therefore, Landau was precluded from becoming a class member in the instant case and, thus, suffered no injury when the district court approved the class action settlement. Absent any injury, Landau lacked standing to appeal.

Therefore, I would dismiss Landau's appeal for lack of jurisdiction.